UNITED STATES DISTRICT COURT 
 DISTRICT OF CONNECTICUT 

SAMUEPLl aLiEnNtiOffROWITZ, 
 Civil No. 3:20-cv-01922 (JBA) 
 v. , 
 March 23, 2022 

MOSQUITO SQUAD OF FAIRFIELD AND 
WESTCDHeEfeSnTdEaRn CtOUNTY, 

RU LING ON PLAIN.T IFF’S MOTION FOR APPROVAL OF CLASS NOTICE AND PROCEDURE 
 On September 21, 2022, the Court certified a class comprised of Plaintiff Samuel 
Lenorowitz and approximately 9,186 others who received a single ringless pre-recorded 
message from Defendant Mosquito Squad of Fairfield and Westchester County seeking 
injunctive relief and damages under the Telephone Consumer Protection Act (“TCPA”), 47 
U.S.C. § 227. [Doc. # 84]. Plaintiff has now moved for approval of its proposed Class Notice 
Plan and Class Notice. [Doc. # 89]. Defendant argues that Plaintiff’s proposed procedures are 
contrary to what the Court laid out in its prior Order, and improperly seek to re-open 
discovery; Defendant instead urges the Court to adopt its own proposed class notice and 
pr oceduBraecsk. g[Droouc.n #d 9 1]. 
 In its Order granting the motion to certify a class, the Court defined the class as: 
 a) All persons within the United States, other than any of Plaintiff’s counsel, b) 
 who received a pre-recorded voice message, on either a cellular phone or a 
 residential landline, c) from or on behalf of the Defendant, placed via the 
 Mobile Sphere platform, d) marketing or promoting Defendant’s services e) 
 during the time period of April 1, 2019 to the present. 
 (Order Granting Pl.’s Mot. for Class Cert. [Doc. # 84].) Plaintiff identified potential 
members of the class by submitting records from Mobile Sphere, a third-party that placed 
customer voicemails on Defendants’ behalf; approximately 516 of these messages were not 
for telemarketing, but to obtain missing credit card information, and so are not within the 
alleged TCPA violations. (Pl.’s Mot. for Class Cert. [Doc. # 56-1] at 7-8.) The exact number of 
telemarketing calls versus non-telemarketing calls is not yet known, because Defendant has 
not produced unredacted call records that will “reflect the particular campaign associated 
with each prerecorded call.” (Pl.’s Mot. for Approval of Class Notice [Doc. # 89] at 1-2.) The 
certified class is made up of approximately 9,186 people—9,703 total calls minus the 516 
non-telemaIdrk. eting calls and also Plaintiff’s counsel, who received one of the unsolicited 
messages. There were two categories of customers in Mobile Sphere’s records; 8,235 of 
the 9,186 non-telemarketing calls were made to numbers listed as “Mobile” numbers in 
Defendant’s records, aIndd. the remaining 951 calls were made to numbers identified as being 
“Landline” numbers. ( at 2.) 
 Defendant and Plaintiff both filed their proposed class notice procedures on October 
26, 2022. The Second Circuit denied Defendant’s motion for interlocutory appeal of the 
Co urt’sD cliasscsu csesirotinfi cation order on February 16, 2023. 
 A. Method of Notice 

 Rule 23(c)(2)(B), which governs class notice contents and procedures, requires “the 
court [to] direct to class members the best notice that is practicable under the circumstances, 
including individual notice to all members who can be identified through reasonable effort.” 
Plaintiff proposes sending individual mailed notice to each member of the class using the 
addresses maintained by Defendants, and to issue the notice via email as well to ensure that 
class members who may have changed address receive notice. (Pl.’s Mot. for Approval at 1.) 
 Defendant has no objection to the method of notice; the Court approves Plaintiff’s 
proposed method of notice to class members under Rule 23(c)(2)(B) 
 B. Content of Notice 

 Fed. R. Civ. P. 23(c)(2)(B) sets out the following requirements for the contents of the 
class notice: 
 The notice must clearly and concisely state in plain, easily understood 
 language: (i) the nature of the action; (ii) the definition of the class certified; 
 (iii) the class claims, issues, or defenses; (iv) that a class member may enter an 
 appearance through an attorney if the member so desires; (v) that the court 
 will exclude from the class any member who requests exclusion; (vi) the time 
 and manner for requesting exclusion; and (vii) the binding effect of a class 
 judgment on members under Rule 23(c)(3). 
 Plaintiff represents that his proposed notice meets all the requirements of Rule 
23(c)(2)(B), and the Court agrees. The introductory paragraph introduces the nature of the 
action as a “class action lawsuit filed against Mosquito Squad of Fairfield and Westchester 
County” for allegedly violating “the Telephone Consumer Protection Act by placing 
prerecorded voicemails regarding its services to people who did not provide prior, express, 
written consent.” (Proposed Class Notice [Doc. # 89-4] at 1.) The notice defines the class by 
quoting this Court’s order certifying the class in its answer to Frequently Asked Question 3, 
and provides more information on the class claims, issues, or defenses both in the 
introductory paragraph and in the answers to Questions 1 and 2, which provide the case 
name, a brief overview of the relevant facts aIndd. statutory basis for the claims, and an 
explanation of why it was certified as a class. ( at 1.) Question 7’s answer explains that 
class members have a right to hire their own lawyer; Question 6’s answer explains both the 
rIigdh. t to be excluded, the repercussions of choosing exclusion, and the method for doing so. 
( at 2.) The answer to Question 5 explains that if class members opt not to be exclIudded, 
they will be bound by the judgment and lose the right to file an independent lawsuit. ( .) 
 Defendant’s only objection to the content of the Notice is that it asserts Class Counsel’s 
contact information should not appear on the notice, and that instead, the Claim 
Administrator’s contact information should appear there. Defendant’s reqSeuee sPta trok erre vm. Coivtey 
of New York, 
 No. 15 CV 6733 (CLP), 2017 WL 6375736, at *13 (E.D.N.Y. Dec. 11, 2017) 
(requiring inclusion of the contact information for Class Counsel, including an address, 
phone number, and email address, on the Class Notice.) However, Plaintiff is instructed to 
add the Claim Administrator’s contact information as well, both at the bottom of each page 
and in the section titled “How do I get more information?” on the second page. 
 WC. ith mIoddeinfitciaftiicoant,i othne o cfo Mnteemntbs eorfs t htoe bclea sNso ntoictiecde are approved. 

 Three issues pose a barrier to identifying which individuals should receive the Class 
Notice. First, Plaintiff does not currently know how many of the calls in Mobile Sphere’s 
records were made for telemarketing purposes, and how many were made for purposes 
outside of the class definition, such as obtaining updated credit card information. (Pl.’s Mot. 
for Approvalat 1-2.) To resolve this issue, Plaintiff proposes requiring Defendant to provide 
unredacted call records, which will reflect the particular campaign associated with each call, 
and cross-referencing that list Iwdith Mobile Sphere’s records to weed out any recipients of 
only non-telemarketing calls. ( .) Second, approximately 10% of the numbers are listed as 
“Landline,” but do not otherwise have any information that would allow the parties to 
determine whether the nuImd.bers were associated with residential or business lines without 
individualized inquiry. ( at 3.) For those individuals, Plaintiff proposes sending a 
questionnaire-style affidavit asking “Was your phone number ______ aI dr.esidential landline, or 
a cell phone number, in April and May of 2019? Yes_____ No _____.” ( ) Defendant does not 
object to this procedure for the Landline customers. 
 The parties disagree, however, on how to resolve the third issue: at the time of class 
certification, it was unknown whether some of the “Mobile” numbers may actually have been 
landline nuImd.bers, since it is technically possible to have a landline service on a wireless 
network. ( a1t. 2D.) eEfaecnhd paanrtt’ys pPrrooppoosseesd a Nseoptiacrea tPel saonl u tion. 
 Defendant proposes resolving this issue by using an opt-in affidavit asking potential 
class members to verify thaaltl they had either a residential landline or a cell phone number in 
April and May of 2019 for of the 9,186 members, rather than only the Landline customers. 
(Def.’s Opp’n to Pl.’s Mot. [Doc. # 91] at 9.) Plaintiff maintains that Defendant’s advocacy for 
the use of opt-in claim affidavits for the entire potential class is being proposed solely to limit 
its liability “based on Defendant’s assumption that most class members won’t go through the 
trouble of signing and returning an Affidavit claim form” because “claims-made class actions 
historically have low participation rates, with participation rates rarely exceeding 5-10%.” 
(Pl.’s Mot. for Approval at 3.) 
 Defendant maintains that its own proposed procedure is the most consistent with the 
Court’s order, which Defendant asserts “expressly adopted the use of a questionnaire.” 
(Def.’s Opp’n at 4.) The Court’s order stated: 
 Plaintiff proposes resolving ambiguities by subpoena to the phone companies 
 or obtaining information by a questionnaire or affidavit as part of the class 
 notice process: “Was your phone number ___________ a residential landline, or a 
 cell phone number, in April and May of 2019? Yes___ No____.” (Reply at 4-6, 9.) 
 ASese teh.ge Bafrfaidvaerv ivt . Noro rqthusetsatri oAnlanramir eS eprvrso.c, eLsLsC has been approved by courts 
 handling this very issue in TCPA class actions, the Court adopts it for this case. 
 ., , 329 F.R.D. 320, 329 (W.D. Okla. 
 2018) (“[I]f issues need to be tried to determine whether a line is a business 
 line or a residential line, those issues could be resolved by asking class 
 members whether the line in question is a residential line during the class 
 notification process, or, in any event, through a standardized and efficient 
 claims process at a later stage”). 
 To the extent the parties contend that the order was uncilfe anre,e tdheed Court clarifies that 
it adopted Plaintiff’s suggestion that an affidavit could be used , but that its Order 
does not (1) preclude the Court from approving a different procedure that is equally efficient 
and responsive to concerns over administrative feasibility, or (2) specify that the affidavit 
will be used at the initial class notice stage, as opposed to using it for verifying class 
membership at the damages stage, should the case reach it. 
 As for the merits of Defendant’s proposal, there is no requirement that the inquiry 
must be made at the class notification sStaegee, ,e .agn.,d B irta ivse ro fvt.e Nn onrotht suttairli zAeladr umn tSiel rtvhse., dLaLmC ages 
stage, as Defendant’s own cases reflect. , 329 
F.R.D. 320, 329 (W.D.o Orkla. 2018) (approving use of individualized inquiry “during the claasst 
na olatitfeicr asttiaogne process, , in any eveInnt r, eth Rreosutagshi sa ( sCtyacnlodsaprodriizneed O apnhdt heafflimciiecn Etm clualismiosn p) rAoncteitsrsu st 
Litig .”) (emphasis added); 
 ., 335 F.R.D. 1, 24 (E.D.N.Y. 2020) (using sworn affidavits to verify consumers who would 
be able to “collect damages” and noting that self-identifying affidavits are often used “to 
establish a class member’s entitlement to recovery in class action litigation.”) Courts 
generally adopt the procedure only where class members cannoSte oet Bhaekrwovi sve. Cboen sidoel. nWtiofireldd 
tThrraovuegl,h I nDce.fendant’s records, expert testimony, or other methods. amended in 
part , No. 15 C 2980, 2019 WL 1294659, at *21 (N.D. Ill. Mar. 21, 2019), 
 , No. 15 C 2980, 2020 WL 10963912 (N.D. Ill. July 2, 2020); (“[t]his discovery enables 
POltahienrtsiffs to identify and send direct notice to a significant portion of the proposed class. 
 may self-identify by submitting documenStaaltaimon v t. hLaifte twhaetyc hre, Icneciv. ed a call by VVT, such 
as a phone bill or affidavit.”) (emphasis added); , No. 13 CV 9305, 2016 
WL 8905321, at *2 (N.D. Ill. Sept. 6, 2016) (using self-identification only because the 
defendant did not have any data on the potential members of the proposed class to use for 
purposes of identification). 
 Defendant has shown no reason why an individualized affidavit procedure is needed 
at this point in the process, and as Plaintiff points out, in class actions that require affirmative 
self-identiSfeicea tion, “claims rates are routinely belowC 1la0i mpse-rMceandte Canlads so-Aftcetnio nw Seellt tulenmdeenr ts1 
percent.” Elizabeth Cabraser and Andrew Pincus, , 
Judicature (2015), https://judicature.duke.edu/articles/claims-made-class-action-
settlements/. Requiring an individualized affidavit from each member before the claims 
process or summary judgment is a procedural bar not supported by either the Federal Rules 
or case law. Courts have specifically rejected the premature use of the procedure as unfair to 
potential class members because it has the potential to “create an unjustified barrier to 
absentee class members’ potential recovery” and “artificially and prematurely restrict 
[Defendant’s] potential liabili tWy,e aslnedy vc.l aSsnsa pm Feimn.b, LeLrsC potential recovery, in advance of any 
determination on the merits.” , 341 F.R.D. 72, 79 (D. Utah 2022). Even 
if individualized inquiry is eventually needed, at this stage any ambiguity over who should 
receive notice will be resolved in favor of sending notice to all 9,186 numbers that received 
a telemarketing call, even if that group later proves to have been overbroad, wSeieth Mthaec ainrtze nvt. 
Tofr annasrwroorwldin Sgy st.,h Ien cc.lass later during the individualizeodn crleaciomnss idperroacteiosns. 
 , 201 F.R.D. 54, 61 (D. Conn. 2001), (May 11, 2001) 
(sending individual notices to the “universe” of class members, although it was twenty-five 
percent over-inclusive, because it was not possible without individual inquiry to determine 
whether the debt at issue was commercial debt that would fall within the class definition or 
consumer debt, and such inquiry was not warranted at the notice stage). 
 The Cou2r. t rPeljaeicnttsi Dffe’sf ePnrdoapnots’se pdr Nopootisceed P pllaann . 

 Plaintiff asserts that the number of Mobile customers who actually had a cell number, 
as opposed to a wirelessly registered landline, can be resolved without individual inquiry. 
Plaintiff represents that based on publicly available data, he has independently verified that 
all customers listed as “Mobile” numbers had a cellular number at the time; he also 
represents that if Defendant questions the reliability of his process for verification, he is 
willing to subpoena the wireless carriers of those numbers once Defendant Irde.leases the 
unredacted class list with the full phone numbers that will allow him to do so. ( ) 
 Plaintiff submits with his motion the declaration of Anya Verkhovskaya to support 
this proposition. As an initial matter, Plaintiff represents that he is not submitting 
Verkhovskaya’s declaration as an expert declaration, because while she is “certainly an 
expert in her field,” her work “does not entail specialized knowledge that requires the use or 
qualification of an expert,” and that “[a]nybody with the requisite Excel skillset” could do the 
same. (Pl.’s Reply [Doc. # 92] at 6.) This argument is unpersuasive. Verkhovskaya’s 
declaration dedicates the first seventeen paragraphs to detailing her prior experience and 
work as an expert. (Declaration of Anya Verkhovskaya [Doc. # 89-2] at 5.) Her method for 
evaluating the data involved loading the publicly available source data into “.SQL staging 
tables,” which is a programming language used to analyze mass structured datasets; in other 
words, the “requisite Excel skillset” that Plaintiff refers to is exactly what makes her an 
expert, because such skills and backgrIodu. nd knowledge are not of the sort that would be 
within the ken of an average person. ( at 5-6) As such, the Court views Verkhovskaya’s 
declaration as an expert declaration. 
 Verkhovskaya states in her declaration that she reviewed the data from Mobile 
Sphere and cross referenced it against publicly available data from Interactive Marketing 
Solutions, a supplier of wireless identification products and services used by the FCC to 
determine when a phone number is registered to a wireless telephone. (Verkhovskaya Decl. 
[Doc. # 89-2] at 26-27.) Using the data and products from IMS, Verkhovskaya asserts that of 
the total 9,703 telephone calls placed by Mobile Sphere, there weIrde 7,455 unique wireless 
telephone numbers that received 8,633 wireless telephone calls. ( . at 39.) In order to use 
this information to generate a proposed class notice list, Plaintiff proposes (1) ordering 
Defendant to produce unredacted call records that will allow Plaintiff to identify the names, 
addresses, telephone numbers, and email addresses of the customers on the list, along with 
the identification of whether they received a telemarketing or non-telemarketing call; (2) to 
the extent Defendant objects to Plaintiff’s method of identifying the wireless callers, issuing 
subpoenas to wireless carries for the Mobile number customers to confirm that they were 
assigned to a cellular service during the relevant time period, (3) cross-referencing the list 
of Mobile numbers with Defendant’s unredacted call records to remove any numbers that 
received only non-telemarketing numbers, and (4) issuing direct notice to that cross-
referenced list of Mobile customers. 
 Defendant objects to Plaintiff’s proposed method of identifying members to receive 
notice, arguing that the Court did not and should not approve further discovery such as 
subpoenas to wireless carriers or expert reports. (Def.’s Opp’n at 3-4.) It further asserts that 
“Plaintiff never designated any expert in this case” prior to the close of discovery, and that 
doing so “at the current procedural posture is improper, untimely, and unduly prejudicial to 
MSFW” because it “never had the opportunity to depose Plaintiff’s expert or designate a 
rebuttal expert,” and would have done so if it knew that expert determinations would be 
used to determine class membershitpe.s t(iDfyeinf.g’s Opp’n at 7.) However, Rule 26’s disclosure 
requirements govern disclosures of experts; experts that provide opinions solely 
on the class notice process are not subject to disclosure, and the Court may consSiedee rL othefe ivr. 
oFpirisnti Aonms. iTf itthlee Iyn as.r eC oo.,f assistance to the Court in establishing a class notice plan. 
 281 F.R.D. 58, 59 (D. Me. 2012) (rejecting the defendant’s arguments 
that filing a declaration by a previously undisclosed expert opining on the class notice 
process was a discovery violation and considering her declaration in developing the class 
notice plan.) 
 Defendant also asserts that it has been prejudiced because for Verkhovskaya’s 
declaration to be properly considered, the Court would have to re-open discovery to allow 
for it to depose VerkhoLovsekf,a ya, designate a rebuttal expert, and potentially engage in motion 
practice. The c ourt in which accepted and considered the declaration of Plaintiff’s class 
notice expert, did none of those things, and enlisting the assistance of third parties to help 
determinea wftheirc h individuals fall within the classS deeef Minaitzizoeni fvo. rM pounrepyo Ssteosr eof creating a class 
notice list class certification is not unusual. , reconsideration , dNeon.i e0d1 -sCuVb- 5n6o9m4 
(MJGaKzz)e, i2 v0. 2T2h eW MLo n2e0y7 S7t9o7re0, at *2 (S.D.N.Y. June 9, 2022) . 
 , No. 01-CV-5694 (JGK), 2022 WL 3155249 (S.D.N.Y. Aug. 5, 2022) 
(after class certification, each side had experts who were ordered to meet and utilize 
documents produced by the defe Innd raen Stus bionx oonrde e(rB utop riedneonrtpihfyin aen Hdy darsocechrtlaoirnid ae &li sNt aolof xcolnases) 
Amnetmitrbuesrts L fiotrig p.u rposes of notice); 
 ,No. 13-MD-2445, 2021 WL 3929698, at *7 (E.D. Pa. Sept. 2, 2021) (certifying 
a class based on Plaintiff’s proposal to issue subpoenas to third party companies and then 
utilizing a company called OnPoint An aMlyothicasm teod avn. Oalfyf zLee atshee Odnaltya, Inanc.d, compile a list of 
customers fitting the class declaration); No. 15-CV-23352- 
CIV, 2018 WL 398326, at *1 (S.D. Fla. Jan. 12, 2018) (sending a list of phone numbers that 
received alleged text messages from InstantCarOffer.com after placing an advertisement for 
a car sale on Craigslist to Craigslist itself to “cross check” whether they were associated with 
a Craigslist advertisement). 
 Defendant raises the same argument against Plaintiff’s proposal that any question as 
to the reliability of Verkhovskaya’s declaration be resolved by issuing subpoenas to wireless 
carriers—essentially, that discovery is already closed, and that it will needlessly prolong the 
process. However, courts have repeatedly allowed for discovery for the narrow purpose of 
putting together a list of po tNennetibael cvl.a Dssa ums,e mbers to be noticed or for purposes of evaluating 
who falls within the class. No. 06-CV-4991 (RJS), 2022 WL 16840242, at *1 
(S.D.N.Y. Oct. 14, 2022) (noting that it had allowed for “discovery with respect to 
communicating with class members” and “ordered Defendants to provide class counsel with 
all potential class members’ names, em aKill oapdpderle vs.s eHso, manedD elalisvte rkynLoiwnkn, Imnca.i,l ing addresses” in 
order to disseminate the class notice); No. 17-CV-6296- 
FPG, 2022 WL 1210484, at *1 (W.D.N.Y. Apr. 25, 2022) (noting that the sequence of events 
hthaedn been class certification and summaryM juedregdmitehn vt .m Uontiitoend sC, oalplepcrtoiovna lB ouf rae aclua, sIsn ncotice, and 
 class discovery as to commonality); ., No. 1:16 
CV 1102, 2019 WL 13150917, at *1 (N.D. Ohio June 18, 2019) (utilizing a period of 
“confirmatory discovery” to verify the number and identity of the class members). 
 In short, Defendant does not take issue with the content of Verkhovskaya’s 
declaration or the reliability of the subpoena method—only with the timing of Plaintiff’s 
proposal to use them. However, the issues of timing are with Defendant’s opposition, not 
Plaintiff’s proposal; Defendant has a due process right to challenge claims or putative class 
members, and by extension any method that Plaintiff uses to identify those class members, 
but it does not have a right to do so specifically at this stage so long as the Court provides it 
with that opportunity dSuerei nWg etshleey claims administration process if or when there is a 
judgment for the class. , 341 F.R.D. at 78 (finding that determination of class 
membership and the process of challenging whether individual class members actually met 
the criteria for class membership was not required at the class notice stage, but could instead 
be reserved for claim administration after a judgment was entered.) 
 To resolve the conflict, the Court will proceed under the presumption that all Mobile 
customers had cell numbers based on Verkhovskaya’s declaration and send them all notice 
once the dataset is cross-referenced with Defendant’s unredacted data to remove the 
numbers that received only non-telemarketing calls. However, the Court also recognizes 
Defendant’s right to engage in either expert discovery, require subpoenas to the wireless 
carriers to verify the data, or renew its request for the use of individual affidavits if or when 
the case proceeds to the claims process phase. This approach balances the interest in 
efficiently and expediently sending out the class notices while preserving Defendant’s right 
to challDen. ge thCel apsust aWtiveeb sciltaes s members at a later stage in the litigation. 

 Plaintiff also proposes establishing a case website with the operative pleadings, Court 
Order certifying the class, the Class Notice, and the affidavit form, as well as a list of 
frequently asked questions, Class Counsel contact information, and the ability for LandIdline 
Customers to submit their affidavit forms online to confirm membership in thIde. class. ( . at 
5.) The website URL would be on the Class Notice and in the email notices. ( ) Defendant 
has no objection, and so the Court approves use of a class website with all the information 
Plaintiff proposes, and that will allow for the Landline Customers to opt for electronic 
submisEsi.o n of Cthlaesirs aAfdfidmaivniits ftorramtosr. 

 Plaintiff proposes the use of the Angeion Group as the Class Administrator to handle 
the issuance of Class Notice, the administration of the case-specific website, processing the 
Class Data, addressing returned mail, processing the affidavit forms submitted by Class 
Members, tracking exclusion requests, and all other ancillary tasks associated with class 
administration. (Pl.’s Mot. for Approval at 7-8.) 
 Defendant has no objection; the Court approves use of Angeion Group as Class 
AdminiFs.t ratorS. cheduling 

 Plaintiff proposes 60 days to allow Wireless Class members to request exclusion, and 
for Landline Class members to claim membership by submitting the opt-in the Affidavit. (Pl.’s 
Mot. for Approval at 7.) Defendant has no objection, and so the Court approves a 60-day 
per iod Ctoo rnecqluuseisot ne xclusion. 

 Plaintiff’s motion to approve class notice form and procedures is granted with 
modification. All customers listed as Mobile numbers on the final joint Class Notice list will 
receive the Class Notice; for the 10% of individuals whose phone numbers are listed as 
Landlines, they will receive both Plaintiff’s Class Notice and the affidavit form to confirm 
whether their landline was residential or commercial. Defendant will reserve its right to 
require confirmation that the mobile numbers actually belonged to wireless phones rather 
than landlines; the exact method of that obtaining that confirmation will be determined if 
this case progresses to the claim submission stage. 
 The Court orders the following: 
1. Defendant shall produce the unredacted call records with the customers’ 
 names, addresses, telephone numbers, and identification of which type of call 
 they received to Plaintiff for purposes of notice, under protective order to 
 preserve customer privacy if need be, by April 6, 2023; 
2. Plaintiff and Defendant will confer and coordinate to cross-reference the 
 unredacted call records with Mobile Sphere’s call records, remove any 
 numbers associated only with non-telemarketing calls, and submit a joint 
 proposed Class Notice list by April 24, 2023 for the Court’s final approval; 
3. Also by April 24, 2023, Plaintiff shall submit a modified Class Notice with the 
 Claim Administrator’s contact information and website added for the Court’s 
 final approval; 

 IT IS SO ORDERED. 

 _________/s/________________________ 
 Janet Bond Arterton, U.S.D.J. 

 Dated at New Haven, Connecticut this 23rd day of March, 2023